## CAMPBELL *et al. v.* RAWDON.

By a will, executed in 1819, the testator, who died in 1832, devised to his sons George and Joseph, and his housekeeper Jane, land, "to them and their heirs, for their use, improvement and equal emolument during their natural lives, and after their decease to the heirs of John Bill." Bill died in 1825, in the lifetime of the testator; he left three children, who survived the testator, one of whom, and the children of another, were the plaintiffs in this action; the third died intestate and without issue : *Held,*

1. That George, Joseph and Jane took estates for life, as tenants in common;
2. The heirs of John Bill took a contingent remainder in fee, vesting in interest at the death of the testator.

The rule construing the word *heirs* used in a will in respect to a living person as merely *designatio personarum,* is inapplicable to the devise of a future estate. In such case the word has its strict legal meaning, and carries the inheritance unless a different intention appears clearly from the context.

A devise to a class of persons takes effect in favor of those who constitute the class at the death of the testator, unless a contrary intent can be inferred from some particular language of the will, or from such extrinsic facts as may be entitled to consideration in construing its provisions.

The death, before the testator, of one of the devisees for life, had no effect upon the estate in remainder, except to entitle the devisee thereof to possession as soon as the will took effect.

A judgment against the testator was, after his death, revived by *scire facias,* and the devised premises sold under the execution, the tenants for life then surviving being the only parties thereto : *Held,* that such sale did not affect the title of the devisees in remainder.

APPEAL from the Supreme Court. Action to recover two-thirds of lot No. 56, in the town of Champlain and county of Clinton. The trial was before Mr. Justice JAMES, a jury having been waived. The judge found the following facts. Joseph Bindon, Sr., was, on the 15th of October, 1819, seised in fee of the land in controversy. On that day he made and published his last will, of which these are the material words : "First. I give and bequeath to my sons George Bindon, Joseph Bindon, and my faithful housekeeper, Jane McCready, all that messuage or tenement in which I now live, with all the household furniture stock

of cattle and buildings and the land known by lot number fifty-six, containing eighty acres, to them and their heirs, for their use, improvement and equal emolument during their natural lives, and after their decease, to the heirs of John Bill, of the city of New York, chairmaker." The testator died seised of the land, May 9, 1832, when the will took effect. George Bindon, one of the devisees, died intestate and without issue, in February, 1825, and Jane Mc-Cready died intestate and without issue, in October, 1843. The plaintiff Mrs. Batey is the daughter, and the other plaintiffs are the grandchildren and remaining heirs of John Bill, who died intestate in 1826, leaving four children, one of whom died intestate and without issue, before the testator, and two others subsequently. One of these last was the mother of the plaintiffs other than Mrs. Batey; the other died intestate and without issue.

The defendant claimed title to the land under a judgment recovered against Joseph Bindon, the testator, in his lifetime. After his death it was revived by *scire facias* against Joseph Bindon, Jr., and Jane McCready only, in October, 1833. The heirs of John Bill were not parties to the writ of *scire facias*, nor were they served with any process to appear or answer to the action. Execution was issued upon the judgment of revival against Joseph Bindon, Jr., and Jane McCready. Lot No. 56 was sold under it, and by the sheriff's deed and subsequent conveyances, was conveyed to the defendant. The court, at general term in the fourth district — the judge's decision at circuit having been made subject to its opinion — ordered judgment for Mrs. Batey, one of the plaintiffs, for one-quarter of two-thirds of the land, and in favor of the defendant against the other plaintiffs. The latter appealed to this court.

*Alonzo C. Paige*, for the appellants.

*Amasa J. Parker*, for the respondent.

COMSTOCK, J.   The first question is, whether Joseph Bin-. don, George Bindon and Jane McCready took an estate in fee in the premises in question, under the will of Joseph Bindon, Sr.   The devise was " to them and their *heirs,* for their use, improvement and equal emolument, during *their natural lives,* and after their decease to the heirs of John Bill, of the city of New York, chairmaker."   In the terms here used  there is an irreconcilable repugnancy.   " Heirs " is a word of perpetuity, but it is followed in this devise by a plain and  precise limitation of the estate to the lives of the devisees, and then, on their decease, over to other objects of the testator's bounty.   It is impossible to doubt that the testator intended to give a life estate only to those three persons.   We must reject the term which denotes perpe- tuity so as to give effect to other language which cannot be rejected, because we cannot suppose it to have been inad- vertently used.   The terms cutting the estate down to one for life, could not have been used by the testator without a definite and exact design.   They were inserted with care, and for the purpose which they plainly express.   We there- fore are not at liberty to disregard them ; and we must hold that the first estate in the premises created by this will was for life only.

It is, in the next place, entirely clear that the three per- sons named took their life estates as tenants in common, and not in joint tenancy. (1 *R. L.,* 54, § 6 ; 2 *Jarman on Wills,* 117.)   On the death, therefore, of any one of the three, the limitation over to the heirs of John Bill took effect as to an undivided third of the lands in question, and when another died, then as to another third.   Joseph Bindon, Jr., one of the life tenants, is still living, and therefore the plain- tiffs can at most recover only two undivided thirds of the premises.   So far, we think, the Supreme Court has cor- rectly interpreted this will.

There were four children of John Bill at the time the will was executed in 1819, one of whom died without issue, and

three of whom were surviving at the death of the testator, in 1832.   Their father had previously died, in 1825, and these three children had become his sole heirs at the time the will took effect.   They were entitled as such to take, as soon as the testator died, all the provision, whatever it was, which the will made for " the heirs of John Bill."    A devise to a class of persons takes effect in favor of those who constitute the class at the death of the testator, unless a contrary intent can be inferred from some particular language of the will, or from such extrinsic facts as may be entitled to consideration in construing its provisions. (1 *Jarman on Wills*, 286, 287.)

The most important question in the case is, whether the limitation over to " the heirs of John Bill " was in fee or of a life estate only.   Two of the precedent life estates had terminated before this suit was commenced.   One of them had not ; Joseph Bindon, Jr., being still alive.   If, therefore, the limitation over was in fee, the plaintiffs are entitled to recover two undivided thirds of the premises, because the plaintiffs, altogether, represent the entire interest embraced in the limitation over.   If for life only, then none of the plaintiffs can recover at all, except Mrs. Batey, and she can recover only one-third of the two-thirds, equal to two undivided ninth parts of the premises; and this portion is recoverable only for her life.   She is the only surviving child of John Bill, the other two who were living at the death of the testator having subsequently died.   The plaintiffs, other than Mrs. Batey, are their representatives, but have no interest, unless their ancestors took an estate of inheritance under the will.   Mrs. Batey is entitled to one-third of two-thirds, because the three children living at the testator's death took the entire provision made for the heirs of John Bill.   The decision appealed from gives her only one-fourth of two-thirds, and in this respect is inaccurate, even if it be correct in holding that life estates only passed under that provision.

But was the limitation over in favor of " the heirs of John Bill " in fee or of a life estate only? The testator, as before observed, died in 1832, but the will was executed in 1819. This question must, therefore, be determined without reference to the Revised Statutes, which, as to wills executed in future, changed the rule of construction, in this respect, as it existed previous to 1830. (1 *R. S.*, 748, § 1.) According to that rule a devise, in order to pass a fee, must contain express words of inheritance, or there must be some other language or provision of the will, expressive of an intention to create more than a life estate. (*Harvey* v. *Olmsted*, 1 *Comst.*, 483; *Olmstead* v. *Olmstead*, 4 *id.*, 56; *Edwards* v. *Bishop*, *id.*, 61.) It is probably true that in nearly all the cases of general devise, where the rule has been applied, the actual intent of the testator has been violated. But the rule, nevertheless, has been settled by an unbroken series of adjudications, and it lies at the foundation of many titles. To a question of this character, therefore, the maxim " *stare decisis* " has a forcible and peculiar application. We are of opinion, however, that quite consistently with this rule a fee was intended to pass under the limitation now in question.

The argument in opposition to this conclusion, if I am able to understand it, is based upon three propositions: 1. John Bill, being alive at the execution of the will, could have no heirs, in the strict and technical sense of the term; 2. By the use of that term, therefore, the testator must have intended the children of John Bill, and hence the devise is to be construed as though the children were named; 3. It was, therefore, a general devise in favor of designated persons, without words of perpetuity, and consequently created a life estate only, according to the rule of construction which has been mentioned.

As no one can be the heir of a living person, and as the persons who will be heirs are uncertain while the ancestor lives, a devise to them as heirs, in the proper sense of the

Campbell *v.* Rawdon.

term, it is said, cannot take effect, and is therefore void. This is obviously so, if the devise be of a present estate, which must vest, if ever, as soon as created. There being no determinate object of the bounty, or ascertained person to take the devise, the attempt to create the estate, of necessity, fails. It is for this reason that limitations in wills in favor or the heirs of a living person, and recognized in the will as living, have been construed to mean appointments in favor of the children of the ancestor named, or his descendants, or the particular persons who would be his heirs if he were then dead. There being no heir according to the true meaning of the term, and as the devise could not otherwise take effect, the testator has been reasonably supposed, in such cases, to refer to a determinate class of individuals living and in his contemplation at the making of his will, or who might be living at the time of his death. These ascertained individuals have, therefore, been deemed the objects of the bequest, although described only as the "heirs" of an ancestor still alive. (2 *Jarman*, 13, 14; 1 *Eq. Cases, Abr.*, 214; *Carne* v. *Roch*, 4 *Moore & Payne*, 862.)

Such a construction is obviously the true one in the cases to which it has been applied. But it is a construction which imputes to a testator a loose and inaccurate use of language, and is not to be resorted to where the reason on which it is founded entirely fails. It is a rule in the interpretation of wills that the testator is presumed to use technical words in their strict and technical sense, unless there is something in the context indicating that he has used them in a different sense. (2 *Jarman*, 1, 2; *Harvey* v. *Olmstead*, 1 *Comst.*, 489, *per* GARDINER, J.) Now the reason for a special or peculiar interpretation of the word "heirs" fails altogether where the limitation is of a future estate. A devise of a future estate to the heirs, in a strict sense, of a living person is a valid limitation, because the estate is not intended to vest until the termination of some present estate created by the same will. Devises of this sort constitute,

at the common law, a well known class of contingent remainders, the contingency residing in the very fact that the persons described as heirs are uncertain while the ancestor is living. (*Greenl. Cruise, tit. Rem., ch.* 1, §§ 19, 20; 4 *Kent,* 208; 2 *Bl. Com.,* 170; *Fearne on Rem.,* 5–9; *Richardson* v. *Wheatland,* 7 *Metc.,* 169.) This species of limitation is also very clearly recognized in our own revision of the law of real estate. The statute (1 *R. S.,* 723, § 13), declares future estates to be " vested or contingent." " They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are *contingent whilst the person to whom* or the event upon which they are limited to take effect remains uncertain."

To uphold a devise of this kind it is quite unnecessary to impute to the testator any inaccurate use of the word "heirs." The very contingency upon which the estate depends implies that the word is used in its strict and primary sense. It was an inflexible rule of the common law that a remainder must vest at the moment, if not sooner vested, of the determination of the precedent estate, or else it could not vest at all. A remainder created in favor of the heirs of a living person could not vest unless the ancestor died before the happening of the event on which it was to vest, because, while he should live, the persons appointed to take the estate as his heirs were unascertained. The uncertainty of his dying before the time should arrive or event should happen on which the remainder was to vest was, therefore, the very contingency which characterized the estate as a contingent remainder. (*Fearne on Rem.,* 3.) Such estates were thus liable to be defeated by circumstances arising subsequent to their creation, but the validity of the limitation was never questioned.

If we apply these principles, there would seem to be no difficulty in the present case. The will in question first gives life estates to three persons as tenants in common. It

then gives a remainder to the heirs of John Bill, who was alive when the will was made. Regarding the limitation from that point of observation, the remainder was contingent, because the heirs could not be ascertained until the death of their ancestor, and he might be living at the determination of the life estates. The estate might, therefore, be defeated according to the rule before mentioned, of which the testator was doubtless entirely ignorant, and which has, since this will was made, been abrogated by statute. ( 1 *R. S.*, 725, § 34.) But the limitation itself was in the precise form recognized in the books as creating a contingent remainder in favor of the heirs of a living person, according to the strict and primary meaning of that word. We are bound, therefore, to suppose that the testator used the word in such a sense, and that he intended to create such an estate, there being nothing in the context to suggest a different interpretation of his language.

We thus reach without difficulty the conclusion that the remainder was in fee. The word " heirs " was not used synonymously with " children," or " descendants," or to designate any class or number of ascertained persons. John Bill having, at the date of the will, four children, they would, in the ordinary course of nature, be his only heirs , and the testator had a just expectation that they would be the actual recipients of his bounty. But if all the descendants of Bill had died before him, the estate in remainder, by force of the term used, would have gone to his collateral heirs. That term included all, however remotely of kin, who could inherit from him at his death, and not only all those, but also the heirs of his heirs forever. " The word heirs is *nomen collectivum*, and it is the same to say heirs of J. S., as to say heir of J. S., and heirs of that heir, for every particular heir is in the loins of the ancestor and parcel of him." ( *Burchett* v. *Durdett, Skinn.*, 205, *per* POLLEX-FEN.) So in *Coke's Littleton* (9, *a*), it is said " *hæredum appellatione venient hæredes hæredum in infinitum.*" See also 2

*Jarman on Wills*, 2, 3, 4. In *Mandeville's case* (*Co. Litt.*, 26, *b*), the devise was to Roberge, the widow of John De Mandeville, and to his heirs, on her body begotten. It was held that Roberge took a life estate only, and that a fee tail passed by the term "heirs" to the son of De Mandeville, and on his death without issue, to his daughter.

Indeed, the familar rule in *Shelly's case* (1 *Coke*, 93), may be referred to in illustration of the force and effect of the word "heirs" in limitations of this kind. According to that rule, a conveyance or devise to a man for life, and then to his heirs, passed a fee to the ancestor. An exact construction would give him only a life estate, and the remainder to his heirs as purchasers. But the rule in that case united the fee, given in terms to the heir, to the life estate of the ancestor, and regarded the whole as vested in him, thus forming an admitted exception in the creation of contingent remainders. (*Fearne*, 28, 29.) But for the prevalence of that rule, much contested and questionable as it was, it was always conceded that a limitation to a person for life, with remainder to his heirs, would give a fee to the latter, by purchase, without any other words of perpetuity; and the struggle was between the rule and the contingent remainder—in other words, between the fee in the heir and the fee in his ancestor; it being never doubted that the limitation to the heir created an estate in fee in one or the other. But the rule in *Shelly's case*, of course, did not and could not prevail where, as in the will before us, the precedent estate was not given to the ancestor, but to some one else. In such cases the fee, therefore, vests in the heir, as it would have done in all cases of devise for life and then over to heirs, but for the intervention of that rule.

For the reasons stated, and without examining the question in any other aspect, we are satisfied that the three children of John Bill, who were his sole heirs at the death of Joseph Bindon, the testator, took a fee in the premises. This fee was limited, by the will, as a contingent remainder

to the heirs of Bill generally, whoever they might be.   At the death of the testator it became a vested remainder in those three children, because their ancestor being already dead they were then his ascertained heirs.   The estate vested in interest immediately, and would vest in possession as soon as the life estates terminated.

The death of George Bindon, in 1825, before the testator died, had no effect upon the estate in remainder, except to entitle the heirs of Bill to actual possession of one-third of the premises as soon as the will took effect.   It is possible that the remainder over, as to this one-third, might have been defeated if Bill had survived the testator, because, in that event, the heirs or persons entitled to take would not have been ascertained, and consequently the remainder would have been contingent in respect to this share, without any precedent estate created by the will to support it.  The devise of a life estate to George, of course, failed by his death before that of the testator, but the very terms of the will carried the remainder to the heirs of Bill, and as they were ascertained when the will took effect, it vested at once not only in interest but in possession.

It appears that in 1833, after the death of the testator, a judgment against him was revived by *scire facias*; that execution was issued and the premises sold by the sheriff, who executed a deed therefor in 1835.   The defendants are in possession under that title.   But the only parties on whom the *scire facias* was served were the two surviving life tenants, Joseph Bindon, Jr., and Jane McCready.  The judgment, execution and sale, therefore, had no effect upon the estates in remainder.   On this point the statute is decisive. It provides ( 2 *R. S.*, 577, § 5), that " where any judgment or recovery shall be revived against any real estate by writ of *scire facias*, the right of any person therein, not made a party to such suit, shall not be impaired or affected by such revival, unless he claim title from the tenant of such real estate who was duly made a party thereto."   We

think the legislature, in passing this statute, intended that execution should not be had upon the lands of a deceased judgment debtor, without a *scire facias*, to which all persons having an interest and intended to be affected thereby, must be made parties by service of the writ upon them.

The judgment must be reversed and a new trial granted.

ROOSEVELT, J., dissented; all the other judges concurring,

Judgment reversed and new trial ordered.