# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

REID *et al. v.* STUART *et al.*

ELLETT & CO. *v.* REID *et al.*

Decided May 7, 1878.

1878
Special Term.

Elizabeth Stuart died in 1859 leaving a will, to which there was a codicil added in these words: "I, Elizabeth Stuart, of Greenbrier county, having made my will, dated on the 1st day of January, (1858) 1857, and having on the 2d day of January, 1858, made a codicil thereto, do now make this codicil to my said will, and do destroy the aforesaid codicil by committing it to the fire: All the lands which I have given in my said will to my daughter, Elizabeth Reid, I now give jointly to her and her husband, Wm. B. Reid, her interest in both land and personal property to be held in trust for her separate use by my son, John Stuart, for her and her heirs forever, and his joint interest in the land to be held by him for life, remainder to the heirs of my daughter Elizabeth forever. Witness my hand and seal the 15th day of March, 1859." By this codicil Wm. B. Reid had a vested life estate in one equal moiety of all the lands devised in the will to Elizabeth A. Reid, with remainder for the life of Elizabeth A. Reid to the heirs of the testator, with remainder in fee to the heir or heirs at law of Elizabeth A. Reid; and the legal title of the other moiety of said lands is vested in John Stuart in fee, as trustee, for the separate use of Elizabeth A. Reid in fee. And Elizabeth A. Reid having died leaving no descendants, December 18, 1872, her husband, William B. Reid, as her heir at law, took under this codicil of Mrs. Stuart's will, a vested remainder in fee in the moiety of the land, in which he had a life interest, which uniting with his life estate he became the owner in fee of said moiety of said lands.

Appeals from two decrees of the circuit court of Greenbrier county, one rendered on the 27th day of April, 1871,

in a cause in said court then pending, in which William B. Reid and Elizabeth A. Reid, his wife, and John Stuart trustee, were plaintiffs, and William R. Stuart and others were defendants, the other rendered on the 16th day of June, 1876, in a cause in which A. L. Ellett & Co. were plaintiffs and William B. Reid and others were defendants, both appeals granted on the petition of John and Wm. R. Stuart and others.

1878.
Special Term.

Reid et al.
v.
Stuart et al.
Ellett & Co.
v.
Reid et al.

J. M. McWhorter Esq., as special judge, presided at the trial of the case in the court below and rendered the decree appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case:

William B. Reid and Elizabeth `A. Reid, his wife, and John Stuart, trustee, on Febuary 8, 1871, filed their bill in the circuit court of Greenbrier county, the principle object of which was to obtain a construction of the codicil to the will of Elizabeth Stuart, which was as follows:

" I, Elizabeth Stuart, of Greenbrier county, having made my will dated on the 1st day of January (1858), 1857, and having on the 2d day of January, 1858, made a codicil thereto, do now made this codicil to my said will, and do destroy the aforesaid codicil by committing it to the fire. All the lands which I have given in my said will to my daughter Elizabeth Reid, I now give jointly to her and her husband, William B. Reid, her interest in both land and personal property to be held in trust for her separate-use by my son John Stuart, for her and her heirs forever, and his joint interest in the lands to be held by him for life, remainder to the heirs of my daughter Elizabeth forever.

" Witness my hand and seal, this 15th day of March, 1859.

" ELIZABETH STUART, [Seal.]"

The will of Elizabeth Stuart bears date January 1, 1858. By its third and fifth clauses she devises and bequeaths to her daughter, Elizabeth Reid, certain real

1878
Special Term.

Reid et al.
v.
Stuart et al.
Ellett & Co.
v.
Reid et al.

and personal property. There are no other provisions in the will, which in any manner can aid in construing this codicil. Elizabeth Stuart, the testatrix, died in the month of July, 1859, leaving three children surviving her, John Stuart, Elizabeth A. Reid, the wife of Wm. B. Reid, who never had any children, and William R. Stuart.

These facts are stated in the bill; and not only is William R. Stuart made a defendant, but his children, the children of John Stuart, the children of one of his deceased daughters, and Henry Stuart and Thomas Bradford, as trustees of Wm. R. Stuart's wife and family, who by said will had land devised to them.

The answers claim, that under this codicil Elizabeth A. Reid has a life estate in one-half of the property, both real and personal, devised jointly to her and her husband; and that her husband Wm. R. Reid has a life estate in the other half of said property, thus jointly devised, with remainder over as to the whole property thus devised to the heirs at law of Elizabeth A. Reid; and they deny, that she has the absolute fee simple title to one-half of the property, devised jointly to her and her husband.

On April 27, 1871, the court rendered a decree, of which so much, as is subject of controversy in this Court, is as follows: "And the court being of opinion, that upon a proper construction of the will and codicil of Elizabeth Stuart, deceased, the plaintiff, William B. Reid, has a vested life estate in one equal moiety in all lands, devised in said last will to Elizabeth A. Reid, with remainder for the life of said Elizabeth A. Reid to the heirs of the testatrix, Elizabeth Stuart, with remainder in fee to the heirs at law of the said Elizabeth A. Reid; and the legal title to the other moiety of said lands is vested in John Stuart in fee, as trustee for the separate use of Elizabeth A. Reid in fee."

On April 15, 1876, William R. Stuart, his children

and their trustees, obtained an appeal from this decree. In the meantime Elizabeth A. Reid died on December 13, 1872, without issue, leaving her husband, William B. Reid, surviving her, to whom she devised and bequeathed all her property of every kind. On November 29, 1875, A. L. Ellett & Co., judgment creditors of William B. Reid, filed their bill in the circuit court of Greenbrier, setting forth all the facts above stated, and claiming, that William B. Reid then owned all the lands, devised by the will of Elizabeth Stuart to him, or to his deceased wife, or to the heirs of his deceased wife, he being the sole heir of his wife; and asking to subject said lands to the payment of all judgment liens, making William B. Reid and the judgment creditors of William B. Reid parties defendants. And this bill also asked the court to construe this codicil to Elizabeth Stuart's will, so that it might be authoritatively determined, what was the interest of William B. Reid in said land, before it was decreed to be sold to pay the judgment liens on William B. Reid's lands; and to this end the bill made William R. Stuart and John Stuart also parties.

John Stuart and William Stuart, set up in their answer the same construction of Elizabeth Stuart's will, that the defendants had claimed in the other suit; and further, that as Elizabeth A. Reid had been married many years prior to the date of her mother's will, and had had no children, and the probabilities then were she never would have any (as she never did) ; that under the law, as it existed when Elizabeth Stuart made her will and died, they, William R. Stuart and John Stuart, her brothers, would have been their sister Elizabeth A. Reid's heirs, had she then died; and that the testatrix, when she used the words heirs in this codicil of the will, referred to them. They state, that the decision of the court in the other case had been appealed from.

William B. Reid, in his answer claims all the lands, and thus sets forth his construction of the will of Elizabeth Stuart.

1878
Special Term.

Reid et al.
v.
Stuart et al.
Ellett Co.
v.
Reid et al.

1878
Special Term.

Reid et al.
v.
Stuart et al.
Ellett & Co.
v.
Reid et al.

"*Fourth*—That by operation of said will of Elizabeth A. Reid, deceased, this respondent, upon her death, became the owner in fee of the real estate aforesaid, devised to the said Elizabeth A. Reid by her mother, she having never disposed of any part thereof during her life except the Raleigh lands; and that by operation of law under the statute of descents in force in this State at the time of the death of his wife, the said Elizabeth A. Reid, this respondent, as the heir of said Elizabeth A. Reid, became entitled to the remainder in the other half of said lands, which had been, by the said Elizabeth Stuart, devised to him for life; that this remainder merged, in the life estate held by him, and thereby respondent became the absolute owner in fee of the whole of said lands, both that portion devised to his wife and that devised to him jointly with her."

On June 10, 1876, the court, J. M. McWhorter special judge presiding, rendered a decree, which, so far as it is before us for consideration, is as follows:

"On consideration whereof, the court is of opinion and decides, that under the will and codicil thereto of Elizabeth Stuart, deceased, Elizabeth A. Reid took and became vested with an estate in fee in the one undivided moiety of the lands, devised to her and the defendant, William B. Reid, by said will and codicil, to be held in trust for her separate use by the defendant John Stuart, and that the defendant William B. Reid, the husband of said Elizabeth A. Reid, took and became vested with a life estate, under said will and codicil, in the other moiety of said lands, with remainder in fee to the heirs of the said Elizabeth A. Reid; that by the last will of the said Elizabeth A. Reid her moiety of the said lands became vested absolutely in the said William B. Reid in fee, except the 'Raleigh lands,' which she sold in her lifetime; and by operation of law under the statute of descents in force in this State in 1872, the time of the death of the said Elizabeth A. Reid, her husband, the said William B. Reid, as her sole heir, became vested

with the remainder in the other moiety of said lands; that this remainder merged with the life estate held by the said William B. Reid therein already, and that thereby he became the owner in fee of the whole of said lands, except the said 'Raleigh lands,' which had been sold as aforesaid."

1878.
Special Term.

Reid et al.
v.
Stuart et al.
Ellett & Co.
v.
Reid et al

From this decree John Stuart and William R. Stuart have appealed to this court. There were other matters involved in each of these decrees, but the appellants are in no manner interested in these other matters, and they have therefore not been stated.

*R. F. Dennis* and *J. W. Harris*, for appellants, relied on the following authorities :

Wig. & O'Hara on Wills (1872) pp. 24-30; *Id.* 49 ; 8 W. Va. 1 ; Hawkins on Wills ; 13 Gratt. 128 ; 41 N. Y. 66; 3 Sandf. Ch. 67 ; 18 N. Y. 417 ; 1 Rich. Eq. 158 ; 18 B. Mon. 370 ; 23 Wall. 137.

*W. W. Gordon, Samuel Price, A. F. Mathews* and *A. C. Snyder*, for appellees, cited the following authorities:

Code of Va. ch. 116 §8 ; Code of W. Va. ch. 71, §8 ; Bouvier's L. Dict. 583; Prec. in Chy. 57 ; Jac. L. Dict. (Heirs.); Code of W. Va. ch. 77, §10 ; Code of Va. ch. 122, §11 ; Code W. Va. ch. 78, §1; Redf. on Wills 386, note 23; 23 Wall. 148; 7 Bac. Abr. 341, F.; 46 Barb. 68; Bright. Dig. 3747, §295 ; 8 W. Va. 18 ; Wigr. on Wills 297; 2 Wall. Jr. C. C. 368 ; 28 Pa. 95 ; Hawk. on Wills 100 ; 14 Beav. 94 ; 9 H. L. C. 17-30 ; 13 Gratt. 35; 2 Redf. on Wills 414; 7 Hare 225 ; 11 Gratt. 67; Hawk. on Wills 91, 92, 99 ; 18 Gratt. 364 ; 5 Dutch (N. J.) 185; 6 C. B. 764 21 N. J. Eq. 13 ; 7 Metc. (Mass.) 169; 18 B. Mon. 329 ; 40 Barb. 498 ; 41 Pa. 288; 18 Pa. 481; 8 Bush. 115 ; 21 Pa. 348.

GREEN, PRESIDENT, delivered the opinion of Court :

Mrs. Elizabeth Stuart, by her will, gave to her daughter, Elizabeth A. Reid, certain lands in fee simple, then

1878
Special Term.

Reid et al.
v.
Stuart et al.
Ellett & Co.
v.
Reid et al.

by a codicil in 1859, she gave these lands to her and her husband, William B. Reid, jointly, her interest to be held by her brother, John Stuart, as trustee, for her separate use, for her and her heirs forever, and his interest to be held by him for life, remainder to her (Elizabeth A. Reid's) heirs forever.

The question submitted to us by these appeals is: What is the construction of this codicil?

It is obvious, that this codicil gives to Mrs. Reid a fee simple estate in one moiety of these lands. The only change effected by this codicil in her interest in a moiety of the lands devised to her by the will is, that by the will she would have had a legal title to them in fee simple, while by the codicil she would have an equitable title to them in fee simple, the legal title being held by her trustee for her separate use.

In the petition for the appeal in the first of these cases the counsel say, that under this codicil Mrs. Reid only had a life estate in one moiety of these lands; and they insist, that the codicil invested her trustee with the legal title, that the property might be preserved to her heirs presumptive, her brothers, and not to be absolutely at her disposal as it was by the will.

The codicil uses the appropriate and exact language, to confer on her a fee simple interest; and it is impossible to construe it as meaning anything else. The object, in changing her estate from a legal to an equitable estate, was obviously not to change the extent of her interest, but to make it an equitable estate for her *separate* use, so that neither the lands nor rents nor profits should be subject to the control or debts of her husband.

The interest of William B. Reid in one moiety of these lands under this codicil is equally clear. It is made expressly a life estate only. In this petition for an appeal it is said, that it is manifest, that on the death of Mr. Reid, his wife surviving him, his interest was intended to pass to her for life, and after her death to her heirs presumptive, her brothers. I can see nothing

1878
Special Term.

Reid *et al.*
v.
Stuart *et al.*
Ellett & Co.
v.
Reid *et al.*

in this will, or codicil, which indicates such intention. On the contrary, it is obvious from the very words of the codicil, that his interest terminated with his life, it being expressly declared to be but a life estate. He had no interest in these lands, which could have survived to his wife, even if the right of survivorship had not been abolished by statute. The one moiety of the lands, a life estate in which he held, if his wife survived him, was at her death to pass to her heirs, but no disposition is made by the codicil of this moiety for the time, which might intervene between his death and her death, and it would therefore necessarily pass to the heirs of the testatrix, Elizabeth Stuart, as undisposed of by her will.

The only real question, presented by these cases, of any difficulty is: What becomes, after his death and after the death of his wife, of the moiety of the lands in which he had a life estate? The codicil says, it shall pass to the heirs of Mrs. Reid forever; and apparently it must go to the same person or persons that the moiety of the lands, left to Mrs. Reid in fee simple, undisposed of by her, must go, for they both pass to the heirs of Mrs. Reid forever. It would seem to be a strange interpretation, which could give a different distination, after Mrs. Reid's death, to the one moiety of the lands held by Mrs. Reid, if undisposed of by her, and the other moiety held by Mr. Reid, for, by the very terms of the codicil, they are both to go to the heirs. of Mrs. Reid forever.

It is obvious, as we have seen, that the word heirs, when used with reference to the moiety of the land, which by this codicil was to go to Mrs. Reid, was used in its ordinary legal sense; but it is earnestly insisted, that the same words were used in a different sense, when used in reference to the moiety of the lands, given to Mrs. Reid for life; and that in that connection the meaning, in-tended by the testatrix, was not Mrs. Reid's heirs, in the ordinary legal sense of the word, but Mrs. Reid's presumptive heirs, her brothers, the persons, who would

1878
Special Term.

Reid *et al.*
v.
Stuart *et al.*
Ellett & Co.
v.
Reid *et al.*

have been her heirs, at the time Mrs. Stuart made this codicil, or died.

As a consequence of this interpretation of the words "Mrs. Reid's heirs," it is contended, that immediately on the death of Mrs. Stuart, the testatrix, there vested in these presumptive heirs of Mrs. Reed, her brothers, a remainder in fee in the moiety of lands, devised to Mr. Reid for life; and this being a vested remainder, it was not in the power of the Legislature of West Virginia, ten years afterwards, to divert it, and that therefore, though there was inserted in the Code of West Virginia, passed in 1868, (see Code of W. Va., ch. 78, §1, p. 484) a provision, making the husband the sole heir of the wife, when she died without descendants, yet this provision of the law must be inoperative, so far as the vested remainder of Mrs. Reid's brothers in this land was concerned.

The first enquiry then is : Are the words in the codicil "remainder after the death of Mr. Reid to Mrs. Reid's heirs forever" to be interpreted according to their ordinary legal signification, or are they to be interpreted as meaning, remainder after the death of Mrs. Reid to the *presumptive* heirs of Mrs. Reid forever?

The general rule is, that "technical words should have their legal effect, unless from subsequent inconsistent words it is very clear, that the testator meant otherwise, or unless a judicial mind sees with reasonable certainty from other parts of the will, that such was not the intention of the testator. See *Jesson* v. *Wright*, 2 Bligh 1; *Jordan* v. *Adams*, 6 C. B. 764; *Quick's ex'or* v. *Quick*, 21 N. J. Equity 17, 18; *Harvey* v. *Olmsted*, 1 Coms. 489.

The authorities all agree, that the natural presumption is, that a testatrix knows the legal meaning of the word, heir; and therefore, if she used it without any expression, showing it was not used in its legal sense, it must be understood, as so used by her. See *Campbell* v. *Rawdon*, 18 N. Y. 416; *Williamson &c.* v. *Williamson &c.*, 18 B.

1878
Special Term.

Reid et al.
v.
Stuart et al.
Eilett & Co.
v.
Reid et al.

M. 371 ; *Morten* v. *Barrett*, 22 Me. 264 ; *Doe* v. *Parratt*, 5 B. & C. 48 (11 E. C. L. R. 139).

Is there any thing in Mrs. Stuart's will or codicil, to show, that in using the words "remainder after Mr. Reid's life to the heirs of Mrs. Reid forever," the testatrix did not use the wod *heirs* in its ordinary legal signification ? There is but a single matter, which can with any reason be urged as raising any doubt, as to whether she did use this word in its legal sense. That is, the codicil on its face shows, that the testatrix knew, that Mrs. Reid was living when she made this codicil.

There are numerous authorities, which hold, that when by a will a present and immediate devise is made to the heirs of a person known to be living, or when the heirs, to whom such a devise is made, are said to be living, the word 'heirs,' in such cases will be construed to mean heirs apparent, or children, and will not be regarded as used in its ordinary legal signification. See *James* v. *Richardson*, 1 Vent. 334 ; 7 Jones 97 ; 3 Keb. 832; Pollex 457 ; 2 Lev. 232; *S. C. reversed* T. Raym. 330 ; *Judgment of reversal reversed in House of Lords*, 1 Eq. Ca. Abr. 214 ; *Burchel* v. *Dardant*, 2 Vent. 311; 1 P. Wms. 233 ; *Goodright* v. *White*, Wm. Black. 1010 ; *Darbison* v. *Beumont*, 1 P. Wms. 229 ; 5 B. & C. 48 (11 Eng. C. L. R. 145); *Campbell* v. *Rawdon*, 18 N. Y. 416 ; *Conklin* v. *Conklin*, 3 Sandf. Ch. 70.

This position has been questioned ; and in deeds it has been held, that a conveyance or grant to the heirs of a living person is void for want of grantee. See *Morris*, &c. v. *Stephens*, 10 Wright (46 Pa. St.) 200 ; *Hall* v. *Leonard*, &c. 1 Pick. 27. But when in a will an immediate devise is made to the heirs of a person known to be living, the weight of authority and reason is, that the word heirs, under such circumstances, should be interpreted to mean heirs apparent, or children. And though it has been said, that such interpretation can only be given, when the will on its face shows, that the testator knew, that the person, to whose heirs the devise is made, was

1878.
Special Term.

Reid *et al.*
v.
Stuart *et al.*
Ellett & Co.
v.
Reid *et al.*

living, see *Heard* v *Horton*, 1 Den. 168, yet this distinc-
tion is said in Wigram on Wills, O'Hara's ed. page 301,
to be rather nebulous, and fit only for the elementary
stages of jurisprudence, where *cy pres* or liberal construc-
tions are raised.

The criticism seems to me just; and the will ought to
be construed in the same manner, whether it shows on
its face, that the testator knew the party to be living, or
whether this knowledge on the part of the testator is
shown otherwise.    If the devise is a present one, to take
effect immediately, and it is made to the heirs of a per-
son known to the testator to be living, it is reasonable
to construe it as intended as a devise to the children
or heirs apparent.    For if the testator did not mean
by the word heirs, heirs apparent, then his devise could
not possibly take effect immediately; and yet this is the
expressed purpose of the testator.    But this reasoning
has no application when the devise to the heirs is not
present or immediate, but is the limitation of a future
estate, after some preceding estate.    There is no neces-
sity to construe the word heirs as meaning heirs appar-
ent in such a case, to effect the expressed purposes of
the testator.    The strict legal signification may in such
a case be attached to the word heirs, and yet the pur-
poses, expressed by the testator, be fully carried out;
for the estate, devised to the heirs, is not intended to
vest, or come into possession, till the termination of some
present estate, created by the same will; and giving to
the word heirs its usual legal signification, the testator's
will is not, as in the other case, necessarily defeated.
For though the party, whose heirs are given such future
estate, be living, yet he may die before the particular
estate ends, and must die at some time; and his heirs
will then be in existence to receive the future estate in-
tended by the will to be devised to them, to take effect
at a future time.

In accordance with these views, it has been held by
the Court of Appeals of New York, in *Campbell* v. *Raw-*

1878
Special Term.

Reid *et al.*
v.
Stuart *et al.*
Ellett & Co.
v.
Reid *et al.*

*don*, 18 N. Y. 412, " that the rule construing the word heirs in a will, in respect to a living person, as meaning heirs apparent, is inapplicable to the devise of a future estate ; and in such case the word, heir, has its strict legal meaning, unless a different intention appears clearly from the context " and in accord with this is *Criswell's Appeal*, 5 Wright (41 Pa.) 288, and *Richardson, &c.,* v. *Wheatland*, 7 Metc. 169.

It is true, that the decision of the Supreme Court of New York, in *Heard* v. *Horton*, 1 Denio 165, already criticised on another point, does not accord with these decisions ; but it is not sustained by the authorities, it cites ; and the difference between a present and a future devise does not seem to have occurred to the court, and no comment is made upon it. The decision in this case, too, on this point, is in effect overruled by the decision of the Court of Appeals of New York, in *Campbell* v. *Rawdon*, 18 N. Y. 417, in which case the decision of the Supreme Court was reversed. But even the case of *Heard* v. *Horton*, 1 Denio 165, if good law, would be no authority for holding, that the word, heirs, could in such a case be construed to mean, heirs presumptive, as contended for by counsel in the case before us. I know no case, in which under such circumstances, it has been contended, much less decided, that the estate could vest in heirs presumptive.

There is an obvious difference between heirs presumptive and heirs apparent in this respect : if the heir apparent lives, he must on the death of the ancestor become the legal or real heir. There can be no contingency, which can happen, which can possibly prevent him from becoming the legal heir, if he lives. But the heir presumptive, if he lives, may never become the legal heir; for before the death of the ancestor some legal heir may come into existence, who will take the estate in preference to the heir presumptive. This consideration seems to me to reduce almost to an absurdity the claim of the heirs presumptive, that they can have a

1878
Special Term.

Reid et al.
v.
Stuart et al.
Ellett & Co.
v
Reid et al.

vested estate during their ancestor's life, under such circumstances; but in truth the heir apparent can have no vested estate in such a case. In such a case neither the heir apparent nor the heir presumptive has any estate. The legal heirs, according to the strict meaning of the word, heirs, have a contingent remainder. Such a remainder is necessarily contingent, because until the death of the ancestor the heir must necessarily be unknown or undetermined. This conclusion is sustained by the reasoning of all the judges in the case of *Moore* v. *Little*, 41 N. Y. 66; for though in that case the judges differed in opinion, it was principally on the interpretation of a New York statute; and the reasoning of all of them supports the conclusion, I have reached.

Fearne, in his work on remainders, divides contingent remainders into four classes. His last class is, when the person, to whom the remainder is limited, is not ascertained, or not in being; and, as an example of this sort of contingent remainder, he puts the case of " a devise to A. for life, remainder to the right heirs of B., then living." See Fearne on Remainders, p. 9. This is approved by Chancellor Kent (see Kent's Com., vol. 4, p. 208); and in *Beinley* v. *Carter* (17 Weekly Reporter) it was held by the lords justices of appeals in chancery, " that the children of a person, to whose heirs a remainder was limited after the death of such person, had no interest in the estate during the life of such person." I have not seen this decision, but it is thus stated by Grover, judge, in *Moore* v. *Little*, 41 N. Y. 92; and in the case of *Richardson, &c.*, v. *Wheatland*, 7 Metc. (Mass.) 169, it was expressly decided, that " a devise of a remainder after a life estate, to the heirs of H. who was living, was contingent till the death of H, and vested on her death in those, who were then her heirs at law." This decision is one directly in point in the case we have under consideration; and it is, as we have seen, sustained both by authority and reason.

To construe the codicil to Mrs. Stuart's will, as giving

1878
Special Term.

Reid et al.
v.
Stuart et al.
Ellett & Co.
v.
Reid et al.

a vested estate in remainder to the brothers of Mrs. Reid in the land, devised to her husband for life, would, it seems to me, obviously violate her will, as it has been expressed in the codicil. I can not suppose, she ever could have intended such a result. To use the language of the court in *Wood's Appeal*, 6 Harris (18 Pa.) 481, " children might have been born to Mrs. Reid afterwards; and by this construction they would have been entirely excluded, because they were not in existence, to answer the description of " *heirs*," at the time of the death of the testatrix. Such an effect would be startling; and such a construction is therefore entirely inadmissible."

To avoid so unreasonable a result it is said, that though it were clear the testatrix looked to the period of Mrs. Reid's death, as the period when the estate was to vest, yet she meant by the words, heirs of Mrs. Reid, those that would be her heirs according to the law existing at the date of her codicil, or her death, that is, Mrs. Reid's brothers, and not those, who would be the heirs of Mrs. Reid according to the law existing at her, Mrs. Reid's death, to-wit, her husband.

Mrs. Reid could have no heirs during her life; and the use of this term is a strong indication, that the testatrix had no particular persons in view, as the favorite objects of her bounty ; and that she looked to the period of Mrs. Reid's death, as the time for ascertaining the persons, who were to take this remainder under this description. When she made use of a term of known legal signification, and one which can not, according to the rules of law, apply to any persons but those, who answered that description at the death of Mrs. Reid, we are bound to believe, that she used the term in its legal sense, unless there is something in the will or codicil to indicate a contrary intention ; and there is nothing, as we have seen. We have no right to interpolate a word, for the purpose of rendering her codicil a devise to the *presumptive heir*, and thus deprive the legal

1878
Special Term.

Reid et al.
v.
Stuart et al.
Ellett & Co.
v.
Reid et al.

heir of the estate expressly devised to him. It is important to the peace of society and the stability of titles, that we should not for light causes depart from an acknowledged general rule of construction.

I have adopted in this reasoning almost the exact words of Lewis, judge, in delivering the opinion of the court in *Wood's Appeal*, in 6 Harris (18 Pa.) 481. It is applicable to the case before us as to that case, though that was a case of a devise to the testator's heirs; and after the making of the will, and before the testator's death, the law was changed, whereby different persons became his heirs.

*Aden's estate*, 2 Wallace, Jr., Circuit Court Reports, p. 368, was a similar case. That case shows, that though the surrounding circumstances render it probable, that the will of a testator has been thwarted by the change in the law of descents after the writing of a will, if the word, heir, receives its usual legal signification, yet it was held, the courts will not, to avoid such results, change the word heir, or put a different construction on it, unless there is something on the face of the will, requiring such novel construction to be placed on this word. And even though the surrounding circumstances tend strongly to to show, that such change in the law will defeat the testator's probable will, unless the legal signification of the word, heir, is abandoned, still this legal meaning is so clear and fixed, that in such a case its meaning cannot be controlled or fixed, even though there be words in the will, which tend in some degree to show, that the word, heir, was used in a sense different from its legal signification.

In that case John Aspden, of Pennsylvania, left this country in 1776, because of his adhesion to the English government during the revolution; he owned then a small quantity of land, which was confiscated because of his treason. When he left here, he went to England, where he resided almost all the time till 1824, though a jury found he was technically domiciled in Pennsylvania,

1878
Special Term.

Reid *et al.*
v.
Stuart *et al.*
Ellett & Co.
v.
Reid *et al.*

when he died. By his will, made in 1791, "he gave all his real and personal estate to his heir at law, or lawful heir, first paying his debts and certain small legacies to A. B. & C." He died worth $250,000.00, all in personal property, owning no real estate, though he still claimed the real estate he had owned in Pennsylvania, which had years before been confiscated. At the time this will was made the English common law of descents was in force. It was afterwards changed by statute law. By the common law A. B. & C. would not only not have been his heirs, but they were absolutely incapable of inheriting from him.

One John Aspden, of England, was his heir by the common law. Evidence was offered to show, that the circumstances surrounding the testator showed clearly that he meant to leave all his property to John Aspden; but it was rejected, because the words heir at law or lawful heir, clearly and fixedly meant the person, on whom the law of Pennsylvania, where he was technically domiciled, casts the real estate of an intestate at the time of his death, and could not be explained by parol evidence. Nor was it allowed to be varied in its meaning by the fact, that the heir at law was required to pay A. B. & C. certain legacies. Though by the new law of descents, A. B. & C. were these heirs at law. The court held, that the whole estate went to A. B. & C. as the persons meant by the phrase " heirs at law, or lawful heirs ;" and they got the whole of it, worth when the case was decided in 1855, some $750,000.00, to the entire exclusion of John Aspden, who would have been the sole heir at law, if the law had remained as it was, when the will was written.

I conclude therefore, that by the codicil to Elizabeth Stuart's will, William B. Reid had a vested life estate in one equal moiety of all the lands, devised in the will to Elizabeth A. Reid, with a remainder for the life of Elizabeth A. Reid to the heirs of the testatrix, with remainder in fee to the heirs at law of Elizabeth A. Reid,

45

1878
Special Term.

Reid et al.
v.
Stuart et al.
Ellett & Co.
v.
Reid et al.

and that Wm. B. Reid is her heir at law, she having died before her husband, said Wm. B. Reid, leaving no descendants, and while the statute law of West Virginia, where this real estate was, provided, that in such case her husband should be her sole heir. The remainder in fee in the moiety of the lands, in which he held a life estate, thereby became at once vested in him ; and merging with his life estate he became the fee simple owner of one moiety of said lands; and by virtue of his being her sole heir, he became the fee simple owner of the other moiety of said lands, excepting the Raleigh lands, sold by her in her lifetime.

The objection, made in the petition for an appeal in the first of these causes, that John Stuart in his individual right was not a party to the suit, is unavailing. In the first place, though in the heading of the bill he is styled John Stuart, trustee, yet in the body of the bill the plaintiffs are said to be John Stuart and Elizabeth A. Reid. He is not there called John Stuart, trustee, and I think might be regarded as personally before the court, but from the decree, rendered in that cause, he has not appealed ; and we may infer, that he does not complain of it. In the second suit he is a formal party defendant ; the same construction is put on Elizabeth Stuart's will and codicil by the decree, as in the first suit; and from it he has appealed. He is therefore formally before this court as a party, as he clearly was in the second suit in the court below ; and the decree being the same, so far as his interest is concerned, in both cases, I can see no possible injury, which can result to him from deciding both cases on their merits.

As to the other matters, contained in the decree of April 27, 1871, in the case of *Wm. B. Reid and wife et al. plaintiffs*, v. *Wm. R. Stuart et al., defendants,* and *William B. Reid, plaintiff,* v. *Elizabeth A. Reid et al., defendants,* the appellants have no interest ; and as to those portions of the decree the appeal was improvidently awarded.

And in the same manner they have no interest in the other portions of the decree, entered on Friday, the 16th day of June, 1876, in the case of *A. L. Ellett & Co.* v. *Wm. B. Reid et al., defendants,* affecting other matters than those discussed in this opinion; and as to those portions of said decree each of said appeals should be dismissed, as improvidently awarded. And the residue of each of said decrees must be affirmed; and the appellees in each of said causes must recover of the appellants, severally, their costs expended, severally, in each of these causes in this court, and $30.00 damages in each of these causes.

1878
Special Term.

Reid *et al.*
v.
Stuart *et al.*
Ellett & Co.
v.
Reid *et al.*

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED as to Appellants.