IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNT OF PROCEEDINGS OF GEORGE GREEN, AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF JOHN GREEN, DECEASED.

*Will — when a devise vests — the force of the word "descendants" used in connection with a devise over.*

A testator by his will devised to his executors one-half of his estate as follows, to "invest and keep invested the proceeds of any part thereof which shall be sold, to collect and receive the rents, income, interest, issue and profits of such one-half and to apply the same to her (his son's wife's) use during her life; and upon her death, I give and devise the same to and among the lawful descendants of my said son George Green, in the shares in which they would inherit from him under the laws of the State of New York."

George Green was married at the time the will was executed and had one child; but his wife dying before the testator, he, after the testator's death, married again and had issue by such second marriage.

A controversy having arisen between the children of the first and second marriages,

*Held,* that as, by reason of the prior death of the son's wife, the trust estate in the executors never arose, the devise at once, upon the death of the testator, vested in the descendant or descendants of the testator's son then in being, to wit, in the child of the first marriage. (VAN BRUNT, P. J., dissenting.)

That the use of the word " descendants," as distinguished from the word " heirs," was conclusive as to the testator's intention ; that the former word harmonized with the gift over, which was to take effect, not upon the death of the son, but upon that of the wife of the son.

APPEAL by Leroy D. Green, an infant and person interested in this accounting, by Rollin M. Morgan, his special guardian and his guardian *ad litem*, from that part of a decree entered in the office of the surrogate of the county of New York which overrules the exceptions, taken to the referee's report herein, filed by Rollin M. Morgan, as special guardian for George H. Green and Leroy D. Green, infants, whereby said Rollin M. Morgan, as such special guardian, excepts to the report of the referee herein filed in the Surrogate's Court and office on May 24th, 1890, in as far as said report finds that the thirteenth objection of Scott Lord, Esq., special guardian herein for John Green, to wit: " That the infants, George H. Green and Leroy D. Green, have no interest whatever in the estate under the provisions of the will of deceased," is well taken and is, therefore, sustained ; and that said infants are entitled to no part of said estate upon its distribution.

And from that part of said decree which confirms the portion of said referee's report excepted to as above stated.

And from that part of said decree which orders and directs that George Green pay the half of the balance remaining in his hands, to wit: The sum of one hundred and fifty-nine thousand, one hundred and twenty-four dollars and ninety-five cents ($159,124.95), to the duly appointed general guardians of John Green, upon giving the security required by law, or if there be no such guardian, that he pay said half into court by delivering it to and depositing it with the Chamberlain of the City of New York to the credit of said John Green.

*Rollin M. Morgan* and *Eugene S. Ives*, for Leroy D. Green, an infant, appellant.

*Scott Lord*, for John Green, an infant, respondent.

BARRETT, J. :

But a single question is presented by this appeal, and that question arises under the fifteenth clause of the will of the testator. This clause is as follows :

"I give, devise and bequeath to my executors, the survivors and survivor of them and their successors, the other half of my real and personal estate, for the wife of my son, George Green, to invest and keep invested the proceeds of any part thereof which shall be sold, to collect and receive the rents, income, interest, issue and profits of such one-half, and to apply the same to her use during her life; and upon her death, I give and devise the same to and among the lawful descendants of my said son, George Green, in the shares in which they would inherit from him under the laws of the State of New York."

The parties have agreed upon the facts proved upon the hearing below, and these facts are as follows:

"The will was dated and executed December 1st, 1885. At that time George Green, the testator's only son, was married to Susan M. Green, who was then alive. She died in 1886. Testator died in February, 188?. At the time of testator's death, John Green, an infant son of George Green and Susan A. Green, the first wife of George Green, was in being. After testator's death George Green married again, and at the date of the accounting two children of George Green, born of his second wife, were living, the infants George H. Green and Leroy D. Green, and also the one child, John Green, by his first wife, born before the death of the testator."

The question in dispute arises from the claim of the children of the second marriage to share with the child of the first marriage. The learned surrogate confirmed the report of a referee, who held that upon the death of John Green the devise and bequest of the one-half of his real and personal property took immediate effect and vested in the child of the first marriage. To this ruling the special guardian of the children of the second marriage duly excepted, and from the decree based upon such ruling this appeal is taken. We think the referee and the surrogate were right in the construction given to the clause of the will in question. The use of the word "descendants," as distinguished from "heirs," is here conclusive of the testator's intention. That word would seem to have been used advisedly, for it harmonizes with the gift over to take effect upon the death of the son's wife, not upon the death of the son. It thus contemplates the possibility of the son's outliving his wife, and it declares as plainly as language can that upon her

death the estate should vest in those who had issued from that son. No person can be the heir of a living person, but a person whether living or dead may have descendants. Consequently, the expression was apt, whether the testator's son died before or after his wife. The period of distribution here being, as we have seen, the death of the son's wife, the beneficiaries included all of the son's children who should come into being before such period. At that period, however, the estate absolutely vested (*Tucker* v. *Bishop*, 16 N. Y., 404), and it necessarily so vested in those then answering to the description of "descendants." Indeed, even the use of the word "heirs" would not have affected this construction if the will had expressly provided for distribution in the lifetime of the son; and it is even doubtful whether the use of the word "heirs" in the will as it stands would have affected the result. For it has been held that a devise to the heirs of A, who is stated in the will to be *now living*, would indicate, with sufficient certainty the persons intended. This description would plainly refer to such persons as were at the time heirs apparent to A, those who would be his heirs if he should then die. (*Heard* v. *Horton*, 1 Den., 168.) And in *Campbell* v. *Rawdon* (18 N. Y., 416) this language was used: "As no one can be the heir of a living person, and as the persons who will be heirs are uncertain while the ancestor lives, a devise to them as heirs, in the proper sense of the term, it is said, cannot take effect, and is, therefore, void. This is obviously so if the devise be of a present estate, which must vest, if ever, as soon as created. There being no determinate object of the bounty or ascertained person to take the devise, the attempt to create the estate of necessity fails. It is for this reason that limitations in wills in favor of the heirs of a living person, and recognized in the will as living, have been construed to mean appointments in favor of the children of the ancestor named or his descendants, or the particular persons who would be his heirs if he were then dead."

The appellant relies mainly upon the case of *Cushman* v. *Horton* (59 N. Y., 149). There the bequest over was "to the lawful heirs of my brother Medad H. Frisbie in equal proportions," and it was held that this legacy did not vest until, upon the death of Frisbie, it was determined who were his heirs. This decision rested upon

the entire absence of any circumstances disclosed in the will in favor of the testator's having used the word "heirs" in a special and limited sense. "Unless, therefore," said JOHNSON, J., "the court is prepared to say it will determine such a question upon mere conjecture, it must necessarily hold that the testator has employed the language in question in its primary and legal sense." It was conceded that the courts had been astute to find grounds to sustain the secondary interpretation of the word "heirs"— that is, its use in the sense of "heirs apparent"— in order to carry out what was indicated to be the intent of the testator. Illustrations were there given of cases where it was provided that the persons designated as heirs should take during the lifetime of the persons whose heirs they are called, or where, as here, provision had been made in the will for the person to whose heirs the devise was made. In that case Medad H. Frisbie was not named or referred to in any other part of the will, and no provision was therein made for him. It was thus a naked bequest to the lawful heirs of a designated person, and it was held that thus a legal interest was created in the exact form in which the testator had expressed himself. The reasoning in that case thus fully supports the construction given to the clause of the will under consideration. George Green, the son, was here adequately provided for by the bequest of one-half of the estate, and the word "descendants," as distinguished from the word "heirs," was selected to express his father's intention with respect to the vesting of the other one-half.

We think, therefore, that the decree of the surrogate was right, and should be affirmed, with costs to both parties, payable out of the fund.

VAN BRUNT, P. J., dissenting.

PATTERSON, J.:

I concur in the affirmance of the surrogate's decree. The time of the vesting in possession of the gift over of the one-half of the residuary estate was by the express terms of the will at the death of the testator's daughter-in-law, and not that of his son. She having died during the testator's lifetime, and the trust estate in the executors never having arisen, the title vested in the descendant or descendants of the testator's son then in being. (*McLean* v. *Freeman*, 70 N. Y., 85;

*Campbell* v. *Rawdon*, 18 id., 412.) The appellant's counsel admits that to construe the residuary clause as he does the words "upon her death" must be eliminated from it. To do so would be to expunge that which is the most important factor of all in the solution of the pending question. It was evidently the intention of the testator, when the will was executed, to fix that event as the fact upon and the time at which the ultimate interest or estate in the one-half should vest in possession ; and the court will not arbitrarily adopt another contingency or another time simply because, in the light of subsequent events, it thinks that if the testator had anticipated them he would have made a different disposition of his property. If anything could be spelled out of this will, in the light of surrounding circumstances, which indicated that the testator intended to postpone the vesting of the estate until the death of the son, we would be very glad to find it, and prompt to act upon it. Nothing is really claimed to have that effect, but the use of the plural "descendants" and the gift over in shares according to the statute of New York. It cannot be inferred from this that the testator contemplated a second marriage of his son and issue of that marriage. He survived his daughter-in-law (for whom the life interest was designed), more than two years and made no change in his will. We are not to presume that he did not understand what would be the legal effect of this fifteenth clause after the death of his son's first wife ; on the contrary, he is to be regarded as knowing it ; and he having made no alteration in that clause, the construction given by the surrogate and the referee was right.

Decree affirmed, with costs to both parties, payable out of the fund.