# WHEELING.

BAER *et al.* v. FORBES *et al.*

Decided June 12, 1900.

1. WILLS—*Construction—Disinheriting Heirs.*
   It is an ancient rule of construction that the heir is not to be disinherited without an express devise or by necessary implication; such implication importing, not natural necessity, but so strong a probability that an intention to the contrary cannot be supposed. (p. 210).

2. "HEIRS"— *Its Legal Meaning.*
   The word "heirs" is a legal term having a definite meaning, and expresses the relation of persons to a deceased ancestor, and not a living, according to the maxim, *"Nemo est haeres viventis."* (p. 213).

3. WILLS—*Rule of Interpretation.*
   It is a rule in the interpretation of wills that the testator is presumed to use technical words in their strict technical sense, unless there is something in the context indicating that he has used them in a different sense. (p. 214).

4. DEVISE CONSTRUED—*Life Tenant.*
   A testator devises his real estate to his wife during her life, and adds, "At the death of my wife all the property to go to my daughter, Isabella Matthews Baer, for the benefit of her heirs." The daughter, surviving the life tenant, takes the property in fee simple under the will. (p. 214).

Appeal from Circuit Court, Marshall County.

Suit by James M. Baer and others, by their next friend, against Hannibal Forbes, and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

RILEY & RITZ, for appellants.

CALDWELL & CALDWELL and J. HOWARD HOLT, for appellees.

McWHORTER, PRESIDENT:

James Mathews made the following will: "Being in feeble health but sound in mind, I do hereby bequeath to my wife, Nancy Mathews, the following described property viz: Lot No. 4 North Wheeling, McClure's addition, on which is one two

story brick house containing seven rooms; lot No. 5, same addition, on which is two story frame house; lot No. 6, same addition, upon which is two story frame house; likewise a farm in Webster township, Marshall County, West Virginia, containing two hundred and fifty acres, more or less. My wife Nancy to be full heir to this property during her life and to have full control of the income arising therefrom. I likewise authorize her to sell sufficient amount of said property to pay any debts I may now owe. At the death of my wife all the property to go to my daughter, Isabella Mathews Baer, for the benefit of her heirs. I declare this to be my last will and testament," which was duly probated in the office of the recorder of the county of Marshall on the 20th day of September, 1871. Mathews left surviving him his wife Nancy, and his daughter Isabella, then the wife of John Baer, and the mother of three children. She afterwards intermarried with H. F. Sinclair by whom she had two children. Nancy, on the 15th of June, 1874, conveyed the tract of two hundred and fifty acres to said Isabella. who in September of the same year conveyed the same to Luke McDermott, who executed a deed of trust conveying the same to Henry M. Russell, trustee, to secure a large part of the purchase money to said Isabella. Said trustee sold the same under the deed of trust, which was purchased by Hannibal Forbes, and conveyed to him by said trustee. On the 2d day of March, 1874, said Nancy, in her own right and as executrix of James Mathews and Isabella conveyed the said Wheeling property, lots four, five and six, to Christian Gleasner in consideration of four thousand three hundred dollars. The children of Isabella, James Mathews Baer, Anna M. Baer and Amelia Baer Jay, and Joseph Henry Sinclair and Frank Sinclair, infants, by their next friend, John R. Loomis, filed their bill in the circuit court of Marshall County, against Hannibal Forbes, Luke McDermott, Christian Gleasner and Isabella Sinclair, claiming the sole right to said property under the will of their grand-father, James Mathews; that said Isabella was simply a trustee under said will for the benefit of the plaintiffs; that by the deeds she executed she conveyed no interest whatever in the property to said McDermott and Gleasner, and that by said pretended deeds and conveyances, and delivering possession and control of said property to defendants Forbes, McDermott and Gleasner, said Isabella violated and abused her trust and that since the death

of Nancy Mathews she has still allowed said defendants to keep and hold the possession of said property and rents, issue and profits thereof, and she has not in any manner accounted to plaintiffs or any of them for such rents, issues and profits, and that she should be required to account for the same since the death of her mother Nancy, and that the pretended deeds executed by her to said defendants should be set aside and held for naught, and that said trustee Isabella should be removed or required to properly execute her trust under the provisions of the said will, and that under the facts and circumstances set out in the bill said will should be interpreted and construed defining the rights and interests of plaintiffs and each of them in and to the property devised, and prayed for relief according to the allegations of the bill, and for general relief. On the 12th of March, 1898, the defendants Forbes and McDermott filed their demurrer, and defendant Gleasner filed his demurrer and answer, in which demurrers plaintiffs joined, and the same were argued, and the court took time to consider of said demurrers, and on the 14th day of June, 1898, the court having maturely considered the same, sustained said demurrers, and the plaintiffs not desiring to further amend their bill, the same was dismissed and judgment for defendants' costs. The plaintiffs appeal, and say the court erred in holding that plaintiffs have no interest in the property of James Mathews under his said will, and their bill should not have been dismissed. The question is as to the intention of the testator in the use of the words, "at the death of my wife all the property to go to my daughter, Isabella Mathews Baer, for the benefit of her heirs." It is earnestly contended by appellants that Isabella, their mother, took nothing under the will for herself, but that she is simply a trustee holding solely and only for their benefit. It must be borne in mind that Isabella was the only child, the sole heir at law of her father. If appellants' contention is correct, then the only child, the sole heir at law is disinherited by the will of her father. "It is an ancient rule of construction, that the heir is not to be disinherited without an express devise or by necessary implication; such implication importing, not natural necessity, but so strong a proability that an intention to the contrary cannot be supposed." Beach on Law of Wills, 537; 1 Ja. on Wills, sec. 326; 29 Am. & E. E. L. 352; *Bender* v. *Dietrick,* 7 W. & S. (Pa.) 287. In *Graham* v. *Graham,* 23 W.

Va. 36, it is held, (Syl. pts. 1 and 2), "The heir will not be disinherited, unless it be done by express terms of the will, or by necessary implication," and, "the heir being favored in law, there should be no strained construction to work a disherison, when the words of the will are ambiguous." Appellants insist that no estate passed by the language of the will to the daughter, Isabella, but that she was named as a mere trustee to hold the legal title to the property for the benefit of her children. What was the intention of the testator in the disposition of his property, is the first matter to ascertain, and then, as stated in *Ewing* v. *Winters,* 34 W. Va., "we are to inquire whether that intention can be effectuated without violating or infringing upon any well settled and inexorable rule of construction heretofore recognized and established." Plaintiffs in their bill allege "that at the time said will was executed and long before, and until the time of his death, the said John Baer, the first husband of the defendant, Isabella M. Sinclair, drank to excess and was reckless and careless in the management of his financial affairs, and in fact would spend all the money he was able to produce from the result of his labors or from others, and that the said James Mathews, the testator, was aware and knew, at the time of the execution of said will, of the habits of said John Baer and his disposition to spend money, and knew that he had great control and influence over his wife, the defendant, Isabella M. Baer, now Sinclair, and the testator well knew, at the time of the making and execution of said will, that if he devise his property in fee to his daughter, or dispose of it in a manner in which she, and through her the said John Baer could get control of the same, that he would have expended the whole of his estate in a very short time." If these facts were all shown to be true the tendency would be not to induce the testator to entirely disinherit his only child who had been so unfortunate in her marriage, but would naturally make him more solicitous for her welfare, in making disposition of his property. If the testator's purpose had been to guard against his reckless, drunken son-in-law, instead of placing the property in the hands of his daughter as trustee, without bond or security, where the husband could have managed it without let or hindrance, if he had the influence over his wife as claimed, he would have placed it in the hands of some reliable person, who could not be influenced by him. But to what extent can we

consider these facts and circumstances if they exist? In *Barber* v. *Railway Co.,* 166, U. S. 83, at page 109, Justice Gray, in the opinion of the court, says: "Evidence of extrinsic circumstances, such as the testator's relation to persons, or the amount and condition of his estate, may be admitted to explain ambiguities of description in the will, but never to control the construction or extent of devises therein contained." *Couch* v. *Eastham,* 29 W. Va. 784; *Smith* v. *Bell,* 6 Pet. 68. It is contended by appellants that plaintiffs took under the will at the date of the death of Nancy Mathews, the life tenant; "that there are three periods at which they might take, namely, at the death of the testator, at the death of the life tenant, the wife, or at the death of the daughter, but we think the language of the will controls, and that is, 'at the death of my wife all the property to go,' &c. Therefore the heirs of the daughter, Isabella M. Baer, are her children living at the time of the death of the life tenant, Nancy Mathews," and appellants cite authorities on the construction of the word "heirs" and the application of the word in speaking of the heirs of persons living, to sustain the right of plaintiffs to maintain their suit. They first invoke the case of *Reid* v. *Stuart,* 13 W. Va. 338. In that case at page 348, JUDGE GREEN in the Court's opinion says: "If the devise is a present one, to take effect immediately and it is made to the heirs of a person known to the testator to be living, it is rasonable to construe it as intended as a devise to the children or heirs apparent. For if the testator did not mean by the word heirs, heirs apparent, then his devise could not possibly take effect immediately; and yet this is the expressed purpose of the testator. But this reasoning has no application when the devise to the heirs is not present or immediate, but is the limitation of a future estate, after some preceding estate. There is no necessity to construe the word heirs as meaning heirs apparent in such a case, to effect the expressed purposes of the testator. The strict legal signification may in such cases be attached to the word heirs, and yet the purposes, expressed by the testator, be fully carried out; for the estate, devised to the heirs, is not intended to vest, or come into possession till the termination of some present estate, created by the same will; and giving to the word heirs its usual legal signification, the testator's will is not, as in the other case, necessarily defeated. For though the party, whose heirs are

given such future estate, be living, yet he may die, before the particular estate ends, and must die at some time; and his heirs will then be in existence to receive the future estate intended by the will to be devised to them, to take effect at a future time." Also the case of *Stuart* v. *Stuart,* 18 W. Va. 675, is cited, also written by JUDGE GREEN, (syl. pt. 2), is as follows: "The rule construing the word *heirs* used in a will in respect to lving persons as merely *designatio personum* is inapplicable to a devise of a future estate, such construction not being necessary in order to give effect to any clearly expressed intention of the testator. In such case the word heirs has its strict legal meaning and means the parties, who would on the death of the *propositus* inherit his real estate; and they take the real estate devised in the same proportions, as such persons would as heirs."

This was not in any case a devise of an immediate estate in possession for the benefit of the heirs of Isabella Baer, but a devise of a future estate to her heirs limited upon a preceding estate for life in Nancy Mathews. Therefore the word heirs must have its technical meaning as held in *Campbell* v. *Rawdon,* 18 N. Y. 412, cited by appellants. "The rule construing the word heirs used in a will in respect to a living person as merely *designatio personum* is inapplicable to the devise of a future estate. In such case the word has its strict legal meaning, and carries the inheritance, unless a different intention appears clearly from the context." It is further said in *Stuart* v. *Stuart,* cited, "The word 'heirs' is a word of well known legal signification, and when used in a will it ought to be given this strict legal meaning, unless from the context it clearly appears that it was used by the testator in a different sense. An instance, where the courts have given to the word heirs, another meaning than its strict technical and well-known meaning, is where a testator by his will makes a present and immediate devise to the heirs of a person known to be living; or where the devise is to heirs said in the will to be living. In such case it is apparent, that the word heirs, must mean heirs apparent or children, and that without violating the clear intention of the testator it cannot be construed as used in its ordinary legal signification;" and, citing *James* v. *Richardson,* 1 Vent. 534; 7 Jones 97; 3 Neb. 832; *Bruchet* v. *Dordant,* 2 Vent. 311; *Goodright* v. *White,* Black. W. 1010; *Campbell* v. *Rawdon,* 18 N. Y. 416; *Conklin* v. *Conklin,* 3 Sang. Chy. 70. In *Cushman* v. *Horton,* 59 N. Y.

149, (syl. pt. 1), "When the word 'heirs' is used in a will to point out legagtees, the primary legal meaning of the word will be given it, unless the context shows the testator used it in a different sense; the question will not be determined on mere conjecture," and in that case in the opinion it is said, "The word 'heirs' is a legal term having a definite meaning, and expresses the relation of persons to a deceased ancestor, and not a living according to the maxim *'nemo est haeres viventis.'* Its primary import relates to the succession of real property," clearly recognizing the distinction between a devise to a living person's heirs, which is to take effect immediately on the death of the testator, and a devise of a future interest after a pervious life estate, and as in *Reid* v. *Stuart,* above cited, holds, that in the latter case the word "heirs" does not mean "children," but takes its primary technical meaning. 1 Greenl. Cruise on Real Pr. Title 16, "Remainder" chapter 4, sections 19 & 20. In *Wallace* v. *Minor,* 86 Va. 550, (syl. pt. 2), "The word 'heir' has a well known techincal meaning. Technical words are *prima facie* to be taken in their legal sense, unless from the contents of the will it plainly appears that testator intended to use them in a different sense." In *Allen v. Henderson,* 49 Pa. St. 333, a testator gave to his "daughter E. in trust for her heirs until they are twenty-one years old—until which time she is to have the income arising therefrom for her support, and the support and education of her heirs and should she die leaving no heirs of her body, then said properties to revert to her brothers and their heirs." This was a devise to take effect *in presenti* and not in *futuro.* Yet the court says in the opinion, "And not withstanding the trust that is expressed, can it be doubted that an interest was intended to vest in her? The trust was an impossible one. She could not be trustee for her heirs. *Nam nemo est baeres viventis."* The court held, "that the trust failed and the devisee took an estate in fee tail, which by the Act of 27th of April, 1855, became enlarged into a fee simple." As very pertinently suggested by appellee's counsel, suppose the testator had left out the name of Isabella Baer entirely and made the devise to some one else "for the benefit of Isabella's heirs," the trust must have failed for want of a *cestui que trust.* There is nothing in the other parts of the will that will throw light upon the question. By inserting the words "and her" between the words

"her" and "heirs," so that it would read "for the benefit of her and her heirs," the evident intention of the testator would be made clear if indeed it is not sufficiently plain as it stands in the will.

The decree of the circuit court sustaining the demurrer is affirmed.

*Affirmed.*