## CHARLESTON.

ALLEN v. SOUTH PENN OIL Co.  *et als.*

Submitted September 8, 1911.  Decided March 11, 1913.

1. DEEDS—*Nature of Estate Conveyed—"Heirs of His Body."*
    If a grant of land be to a person "and the heirs of his body," to take effect *in presenti*, and there are no other words in the deed, and no circumstances appearing in the case to indicate a purpose of the grantor to restrict their usual and technical meaning, other than the fact that the grantee then had living children, the words, "heirs of his body," will be construed to be words of limitation, creating, at the common law, an estate tail, which, by the statute, is raised to a fee simple. (p. 157).

2. HUSBAND AND WIFE—*Conveyances by—Construction—Payment of Price.*
    A deed by husband and wife to a grantee, providing for payment to the "grantor" at a future time of part of the purchase money, constitutes the husband and wife joint obligees. (p. 160).

3. PAYMENT—*Joint Obligees—Discharge of Debt.*
    Payment to any one of several joint obligees discharges the obligation. (p. 161).

Appeal from Circuit Court, Doddridge County.
Bill by William Allen and others against the South Penn Oil

Company and others. Decree for plaintiffs, and defendants appeal.

                                                          *Reversed.*

*A. B. Fleming, Charles Powell,* and *Kemble White,* for appellants.

*W. S. Stuart,* and *Edward G. Smith,* for appellees.

WILLIAMS, JUDGE:

Claiming to be the owner in fee of a tract of land in Doddridge county, Mary N. Allen, by deed 5th April, 1892, in which her husband united, conveyed to the South Penn Oil Company all the oil and gas in said tract, together with the right to mine and remove it. The consideration was $100 in cash and $500 to be paid either ninety days after a well was drilled; or, if no well was drilled, then within fifteen years from the date of the deed; and if the $500 was not paid the grantee's estate was forfeited, or reverted. The grantee was given the option either to pay the $500 at any time before the fifteen years expired, and thereby prevent a forfeiture; or to decline to pay it, even after a well was drilled, and thereby forfeit its estate.

In February, 1907, within said period of fifteen years, the South Penn Oil Company drilled a well which produced gas, and within ninety days thereafter paid to Edgar Allen, husband of Mary N. Allen, $500, Mary N. Allen being then deceased and no administrator having qualified to administer on her estate. The South Penn Oil Company then, in February, 1907, sold the well and all the oil and gas in said land to the Hope Natural Gas Company.

Mary N. Allen acquired title to the aforesaid land by deed from her father, Levi Roberts, made in October, 1889. She was then the mother of four children, three of whom, William, Ellsworth and Irvin Allen, are the plaintiffs, and U. G. Allen. Claiming as joint tenants with their mother, plaintiffs brought this suit to enjoin the defendants from further drilling for oil and gas and for an accounting. The cause was submitted on the pleadings, record evidence and an agreed statement of facts; and on the 10th March, 1910, the court decreed that the deed from Levi Roberts to Mary N. Allen vested her with an un-

divided one-fifth only in said tract of land, and each of her four sons with an undivided one-fifth; that the Hope Natural Gas Company was the owner of one-fifth only of the oil and gas, and that plaintiffs were the joint owners of the other four-fifths, they having acquired the one-fifth therein of U. G. Allen; and perpetually enjoined defendants from further operating for oil and gas. From that decree the South Penn Oil Company and the Hope Natural Gas Company have appealed.

The decision of the case turns wholly upon a proper construction of the deed from Levi Roberts to Mary N. Allen, which reads as follows, viz.:

"This deed made this 8th day of October, 1889, between Levi Roberts and Elizabeth Roberts, his wife, of *of* the first part and *Mary N. Allen and the heirs of her body* of the second part, all of the county of Doddridge and State of West Virginia.

"Witnesseth, that for and in consideration of the natural love and affection which the said parties of the first part have and bear unto the said parties of the second part, the said parties of the first part grant and convey unto the parties of the second part all of a certain lot, tract or parcel of land which is full share of said parties of the second part in the real estate of the said parties of the first part, and lying and being on the waters of Ragans Run, a branch of McElroy Creek in the District of McClellan in Doddridge County, and State of West Virginia, and bounded and described as follows:" Then follows the description, and the signatures.

What did the grantor mean by the words, *and the heirs of her body?* Did he mean her children, of whom there were four; or did he mean that class of persons upon whom the law casts descent? If he meant children, then the words are words of purchase, and vested the four sons with a joint estate in fee with their mother; but if he used the words to define a class of persons to whom the property would descend by the law of inheritance, then they are words of limitation, creating an estate in fee tail in the mother, which the statute, sec. 9, ch. 71, Code 1906, raises to an estate in fee simple.

In construing both deeds and wills, it is an established rule that technical words must be given their usual technical mean-

ing, unless it appears from other parts of the instrument, or from the circumstances of the case, that they were intended to have a different meaning. *Hinton* v. *Milburn,* 23 W. Va. 166; *Tomlinson* v. *Nickell,* 24 W. Va. 148; *Irvin* v. *Stover,* 67 W. Va. 356.

In order to create a fee simple estate by conveyance, at common law, it was necessary to use the word "heirs"; 2 Blackstone Com., 107; 2 Min, Inst. (2nd ed.) 75; and in order to create a conditional fee, or fee tail as it was commonly called, it was necessary to use the words "heirs of his (or her) body." 2 Blackstone Com., 110; 2 Min. Inst. 78. Those words, being originally necessary to create estates of inheritance, came to have a technical and well understood meaning in law; and notwithstanding the early statutes, dispensing with their use and giving every deed the effect to convey the greatest estate the grantor has, unless limited by the deed to a less estate in the one case and converting an estate tail into an estate in fee simple in the other, still, when used in conveyancing, they retain their original and technical meaning and must be so interpreted, unless it is necessary to attribute to them some other meaning, in order to carry out the manifest purpose of the grantor, made to appear from other language of the deed, or from the circumstances of the case. *Baer* v. *Forbes,* 48 W. Va. 208; and cases *supra.*

The tenacious adherence of the courts to the legal, technical meaning of the words "heirs" and "heirs of the body," is well illustrated by the case of *Tomlinson* v. *Nickell, supra.* In the will involved in that case, the testator had used the word "heirs" twice in the same sentence. He devised all the remainder of his lands to his son, and then added this proviso: "If my son should die without having heirs he shall divide the land between his sisters heirs as he may think proper." Now, it is easily seen that, if the word *heirs,* in both instances, is given its technical meaning, it produces an absurdity. Because the son could not die without heirs so long as there were heirs of his sister living. The heirs of one would be the heirs of the other. But it was possible to avoid this effect, either by construing the word *heirs,* relating to the son, as heirs apparent, or children, and, as it relates to the daughter, either as children,

or as technical heirs. But the court departed no further from the rule of construction than was necessary to avoid the absurdity and give effect to the will, and held that *heirs,* as applied to the son, meant *heirs of the son's body,* but as applied to his sister, it should be given its ordinary, technical meaning, and meant heirs in general.

The rule in this state in construing either deeds or wills is, to ascertain, if possible, the grantor's or devisor's intention from the whole instrument, and then to give effect to that intention, unless it contravenes some principle of law. *Irvin* v. *Stover, supra,* and cases cited in the opinion at page 361. But, in the present case, there is nothing in the circumstances of the case, or in the language of the grantor's deed to indicate a purpose to make the children of his daughter Mary N. Allen joint grantees with her, except the technical words, "heirs of her body." Hence, they must receive their technical meaning.

The cases cited in brief of counsel for appellees in support of the decree of the lower court, are easily distinguishable from the present case and harmonize with the views which we have herein expressed. *Roberson* v. *Wampler, Guard. etc.,* 104 Va. 380, involved the construction of a deed made by James Roberson and wife to "the heirs of John B. F. Roberson," a living person. It was not a grant to a person and *his heirs.* Says Judge Buchannon, in the opinion of the court, page 385: "There can be no question that the grantor used the word 'heirs' in this connection in the sense of children, for he himself was then living, and had no heirs." *Nemo est haeres viventis* is a familiar maxim of the law.

*Tinder* v. *Tinder,* (Ind.) 30 N. E. 1077, called for the construction of a deed made by one Woodruff Beals to "Sarah A. Tinder and the heirs of Simon Tinder by Sarah A. Tinder his wife." In that case, as well as in the case last above referred to, the grant was to take effect *in presenti.* Simon Tinder and his wife were both living, and had five living children at the time. The court there held, and we think properly so, that the grantor, by the use of the word "heirs", meant children. Says the court in its opinion: "The plain meaning of the grantor was that the children of Sarah A. Tinder and Simon Tinder should take the land, since the 'heirs of Simon Tinder by Sarah

A. Tinder, his wife' could be no other than their children."
Unlike the present case, the language is not such as would have
created in Sarah A. Tinder an estate tail at the common law.
The grant was to her and the heirs of her husband by her.

In case of a grant or devise to take effect immediately, to the
heirs of a living person, *heirs* is generally held to mean children.
Such a construction is necessary to prevent a failure of the
grant for indefiniteness of description of the grantees. *Stuart*
v. *Stuart,* 18 W. Va. 675, and cases above cited. See also *Thorp*
v. *Yarbough,* (Ga.) 4 S. E. 913; 4 Words & Phrases, pp. 3241
and *seq.*

That the words, "heirs of her body," occur in the preamble,
rather than in the granting part of the deed, can make no
difference; the effect is the same as if they had occurred in the
*habendum.*    Nor is the fact that the plural, instead of the
singular, number is used in referring to the grantee sufficient
to indicate a purpose to convey to any person other than his
daughter Mary N. Allen. It was she for whom he expressed the
love. and affection that moved him to execute the deed; and it
was she whom he wished to debar, in view of the advancement
then made, from inheriting any portion of his estate, for it was
she, and not her sons, who was then his heir apparent.

Our conclusion is that the words, "heirs of her body," are
words of limitation, and, in view of sec. 9, ch. 71, Code (1906),
converting estates tail into estates in fee simple, operated to
vest in Mary N. Allen the fee simple estate in the entire tract
of land.

Counsel for appellees insist that the South Penn Oil Company
has forfeited its estate, by failure to pay the $500. But even
if it was true that it had not paid, equity would not enforce a
forfeiture for a breach of covenant merely to pay money, but
would rather delight in relieving against a forfeiture. *Pheasant*
v. *Hanna,* 63 W. Va. 613. But the fact is that the money was
paid to Edgar Allen, the husband, within ninety days after the
well was drilled and within fifteen years after the date of the
lease. Mary N. Allen was then dead, and no administrator had
qualified to administer on her estate. That might have been a
good excuse for not paying, if no one else had been entitled to
receive the money. But the $500 was unpaid purchase money

for land conveyed by the husband and wife jointly; it was payable, by the terms of the deed, to the "grantor." That constituted Mary N. Allen and her husband joint obligees. *Morrison* v. *Coal & Coke Co., 52 W. Va.* 331. And it is a well settled rule that payment to one only of several joint obligees discharges the debt. 22 A. & E. E. L. (2nd ed.) 524, and numerous cases cited under note 4; 30 Cyc. 1183, and cases under note 24.

The decree will be reversed and an order entered here dissolving the injunction and dismissing plaintiffs' bill, with costs to appellants both in this Court and the court below.

*Reversed.*